UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOSHUA ZICKEFOOSE,**

        **Plaintiff,**

   v.                                   Civil Action 2:22-cv-1935
                                           Magistrate Judge Chelsey M. Vascura

**LLOYD J. AUSTIN, III**
*Secretary, US Department of Defense*,

        **Defendants.**

## OPINION AND ORDER

Plaintiff, Joshua Zickefoose, brings this action under Title VII of the Civil Rights Act of 1964, alleging that his employer, the United States Department of Defense, discriminated against him and harassed him on the basis of sex and retaliated against him for opposing discriminatory practices. This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c), is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint or in the Alternative for Summary Judgment (ECF No. 18). For the following reasons, Defendant's Motion is **GRANTED IN PART and DENIED IN PART**.

       **I.**     **BACKGROUND**

Plaintiff, who is male, was employed full-time by the Department of Defense at all relevant times as a Quality Assurance Specialist GS-1910-09. (Am. Compl. ¶¶ 9–10, 13, ECF No. 14.) In January 2019, Plaintiff informed his direct supervisor that he was expecting the birth of a child at the end of May or early June. (*Id.* at ¶ 15.) In April 2019, Plaintiff inquired with his direct supervisor and Human Resources regarding policies for paternity leave or leave to care for

a pregnant spouse. (*Id.* at ¶¶ 16–19.) At an unspecified time, Plaintiff apparently requested leave without pay ("LWOP") in connection with the birth of his child, but that request was denied on April 16, 2019. (*Id.* at ¶ 20.) Plaintiff then requested leave on April 18, 2019, under the Family and Medical Leave Act ("FMLA"), supported with documentation from a medical provider, to care for his wife "as need[ed] for periods of [bed] rest during prenatal and postnatal care." (*Id.* at ¶¶ 21–23.) Plaintiff did not immediately receive a decision on his FMLA leave request. Plaintiff also requested hours of advance sick leave on May 9, 2019, but that request was denied. (*Id.* at ¶¶ 29–31.) On May 22, 2019, Plaintiff was told by an unspecified individual that "his requests were going to be denied," even though Plaintiff alleges that "[u]pon information and belief, [Defendant] grants LWOP request[s] for females in similar circumstances." (*Id.* at ¶¶ 26, 33.)

On May 24, 2019, Plaintiff's second-level supervisor, Kathy Brewster, "made negative comments about Plaintiff's leave usage." (*Id.* at ¶ 34.) Specifically, Brewster stated that "Plaintiff should live with his life choices including his wife being pregnant and that Plaintiff [had] not been a good steward of Plaintiff's leave." (*Id.* at ¶ 36.) Plaintiff characterizes this comment as "direct evidence that Plaintiff's supervisors were viewing him differently at work for him taking on a caregiver role as a male," that he was being "[p]enaliz[ed] . . . for failing to conform to masculine norms of focusing on work and leaving childcare 'to his wife,'" that "Brewster's comments were based on sex stereotyping," and that, "upon information and belief, she would not have said the same thing [to] a pregnant female requesting leave in a similar circumstance—that the pregnant female should live with her life choices." (*Id.* at ¶¶ 38–40.) Brewster also stated that "the leave did not have to be approved." (*Id.* at ¶ 42.) During the same conversation, Brewster suggested "there were issues because Plaintiff was a new employee," but when asked to provide examples, Brewster could not identify any examples of problems with

Plaintiff's performance. (*Id.* at ¶ 41.) When Plaintiff mentioned what he had read in the available leave policies, Brewster "told Plaintiff to stop being rude, and eventually walked away." (*Id.* at ¶ 43.)

On May 30, 2019, days before Plaintiff intended to take leave, Plaintiff received approval for his FMLA leave request. (*Id.* at 46.) Plaintiff alleges that he and his wife suffered considerable stress during the time between Plaintiff's request for leave and the approval more than a month later, and that there was no legitimate reason for the delay. (*Id.* at ¶¶ 47–51.) Plaintiff alleges that, "[u]pon information and belief[,] because Plaintiff was male, [Defendant] treated him differently for the leave issues than they would have if [he] was female." (*Id.* at ¶ 58.)

Shortly after Plaintiff returned from his leave, Plaintiff's training supervisor, Kimberly Morgan, issued Plaintiff a Letter of Counseling on July 29, 2019, addressing proper leave request procedure and asserting that Plaintiff had "requested leave in a manner not appropriate." (*Id.* at ¶¶ 59–60.) Plaintiff disputes the accuracy of the Letter's assertions regarding Plaintiff's leave requests. (*Id.* at ¶¶ 63–67.)

Also on July 29, 2019, Plaintiff was "returned to the [Pathways to Career Excellence ("PaCE")] Training Center for additional training for a period of 90 days" and was told the decision was made "since you have been out of the office for an exten[ded] period due to the birth of your child, and missed a lot of work before the birth." (*Id.* at ¶¶ 70, 72.) Plaintiff alleges the additional training was not necessary and was imposed in retaliation for his use of leave in connection with the birth of his child. (*Id.* at ¶¶ 73–74.) In fact, Plaintiff's Training Center Trainer and Supervisor told Plaintiff that "his training level was not a problem." (*Id.* at ¶ 76.)

3

Plaintiff further alleges that the unnecessary training cause him to miss out on overtime opportunities. (*Id.* at ¶ 75.)

On the same day, July 29, 2019, Plaintiff made informal contact with an Equal Employment Opportunity ("EEO") counselor. Defendant became aware of Plaintiff's EEO contact "shortly after." (*Id.* at ¶ 78.) Plaintiff made a formal EEO complaint on September 14, 2019. (*Id.* at ¶ 4.)

Plaintiff alleges that he was improperly charged with a day of LWOP on February 13, 2020, instead of the appropriate coding of Annual Leave. (*Id.* at ¶ 80.) On March 2, 2020, Plaintiff alleges that he was improperly instructed to provide 24 hours' notice when he intended to use his already-approved intermittent FMLA leave. (*Id.* at ¶ 85–86.) Defendant allegedly told Plaintiff that "mothers were also required to schedule out intermittent use of FMLA" but "did not provide specifics." (*Id.* at ¶ 87.) Plaintiff alleges that "upon information and belief, the claim [that mothers were also required to schedule out intermittent use of FMLA] was false." (*Id.* at ¶ 88.)

On March 17, 2020, Plaintiff received a Notice of Proposed Suspension. (*Id.* at ¶ 89.) The contents of this document are not entirely clear from Plaintiff's Amended Complaint, but it appears Plaintiff was issued discipline due to alleged improper reporting of time and attendance, failure to follow instructions with regard to requesting leave, and engaging in "conduct unbecoming." (*Id.* at ¶¶ 90–94.) Plaintiff contends that any misconduct on his part was "provoked" by Defendant "by keeping Plaintiff in a hostile work environment" and "Plaintiff's actions were not unbecoming under the circumstances." (*Id.* at ¶ 95.) In one instance, Plaintiff alleges that Defendant mischaracterized Plaintiff as absent without leave when "he was provoked in a meeting, left to go to the EEO office, [and] went to seek medical care." (*Id.* at ¶ 96.)

4

In April 2020, Plaintiff received an "unacceptable" rating on his quarterly evaluation. One of the reasons given for the "unacceptable" rating was that Plaintiff "has an EEO complaint with supervis[or] that has since retired. He doesn't seem able to get around the issues that were caused about a year ago and move on." (*Id.* at ¶¶ 99–100.) Plaintiff alleges that this comment "shows the rating was at least tainted by retaliation" and that his performance was, in fact, satisfactory. (*Id.* at ¶¶ 101–03.)

After a hearing was held on his EEO Complaint, Plaintiff received a Final Administrative Decision on January 11, 2022. (*Id.* at ¶ 6.) The Decision found in Defendant's favor on Plaintiff's claims for discrimination and harassment, but ordered Defendant, within 30 days, to pay Plaintiff $2,500 as damages for his retaliation claim, and ordered Defendant to provide EEO training to its supervisors within 90 days. (Nov. 30, 2021 EEOC Decision 16–17, ECF No. 18-1.) Defendant filed a Final Compliance Report on March 11, 2022, confirming that it had performed its obligations under the Decision. (ECF No. 18-2.) Plaintiff commenced this action on April 11, 2022, 90 days after receiving the Decision. (Compl., ECF No. 1.) Plaintiff's Amended Complaint asserts two counts under Title VII: Count I for discrimination and harassment on the basis of sex, and Count II for retaliation. (Am. Compl. ¶¶ 110–24.)

Defendant filed the subject motion on October 28, 2022, moving to dismiss Plaintiff's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment under Rule 56. (ECF No. 18.) Defendant argues that dismissal or judgment in its favor is warranted because (1) Plaintiff failed to exhaust his administrative requirements prior to filing suit in federal court, (2) Plaintiff has failed to state a claim for discrimination or harassment, and (3) Plaintiff has not disgorged the award of $2,500 paid to him by Defendant by order of the EEO judge in the administrative proceedings.

## II. STANDARDS OF REVIEW

Defendant moves, with respect to exhaustion of administrative requirements and failure to state a claim for sex discrimination or harassment, for dismissal under Rule 12(b)(6). With respect to exhaustion of administrative requirements, Defendant also moves in the alternative for summary judgment under Rule 56. Finally, Defendant moves, with respect to disgorgement of the administrative award, to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the Court must "accept non-conclusory allegations of fact in the complaint as true and determine if the plaintiff has stated a plausible clam for relief." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (cleaned up).

Defendant's Motion is accompanied by exhibits that were not attached to Plaintiff's Complaint. To the extent those exhibits were "referred to in the pleadings and [are] integral to the claims," the Court may consider the exhibits without converting the Motion to dismiss under Rule 12(b)(6) to one for summary judgment under Rule 56. *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). Otherwise, the Court must either reject reliance on the exhibits or convert the motion to one for summary judgment. *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006).

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the court may "consider the fact undisputed for purposes of the motion"). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255 (citation omitted).

Finally, Defendant challenges subject-matter jurisdiction under Rule 12(b)(1) with regard to Plaintiff's failure to disgorge his administrative award. "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014). A facial attack challenges the plaintiff's allegations as to subject-matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis. *Id.* A factual attack challenges the facts underlying the Plaintiff's allegations of subject-matter jurisdiction. "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* Regardless of the type of attack, Plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Id.*

7

### III. ANALYSIS

A. **Defendant has not demonstrated that Plaintiff failed to exhaust his administrative requirements.**

"The right to bring an action under Title VII regarding equal employment in the federal government is predicated upon the timely exhaustion of administrative remedies." *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991). However, "[f]ailure to exhaust administrative remedies in a timely manner is an affirmative defense, and the defendant bears the burden of pleading and proving this failure." *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008). Defendant's arguments as to exhaustion rely heavily on records of the underlying EEO proceedings that were not attached to Plaintiff's Amended Complaint. The Court finds that, regardless of whether it considers Defendant's exhaustion arguments under Rule 12(b)(6) or Rule 56, Defendant is not entitled to dismissal on exhaustion grounds.

Here, Plaintiff filed an EEO complaint (EEOC Case No. 32-2020-00083X, the "First EEO Complaint") pertaining to several events occurring over the period of April 2019 through March 17, 2020. (Nov. 30, 2021 EEOC Decision 2, ECF No. 18-1.) Plaintiff filed a second EEO complaint (EEOC case no. 532-2022-00017X, the "Second EEO Complaint") listing five events that occurred in 2020, during the same time frame as the First EEO Complaint. Initially, Defendant dismissed the Second EEO Complaint as raising issues duplicative of those raised in the First EEO Complaint. After Plaintiff objected to that dismissal, the EEO judge presiding over the Second EEO Complaint issued an order on August 12, 2022, for the parties "to clarify which issues were raised when, and if issues were raised more than once." (Sept. 8, 2022 EEOC Dismissal 1, ECF No. 18-3.) However, the EEO judge subsequently declined to determine whether the issues raised in the First and Second EEO Complaints were duplicative after she learned that Plaintiff had already commenced this case in federal court. (*Id.*) The EEO judge held

a conference with the parties, but received "no logical explanation as to why [Plaintiff] would carve out 5 events (not "issues") in 2020 from his factual allegations in his pending federal court case based on [the First EEO Complaint], or how those events could be considered separately from the events alleged in his federal court case." (*Id.* at 1–2.) The EEO judge then dismissed the Second EEO Complaint without prejudice to reinstatement following final judgment in the federal court litigation. (*Id.* at 2.)

The parties' briefs do not discuss the relevant standard for evaluating whether a Title VII plaintiff's federal claims were encompassed by his administrative complaint. That standard is the "expected scope of the investigation" test, which the Sixth Circuit has explained as follows:

> In *Weigel v. Baptist Hosp. of East Tennessee,* 302 F.3d 367 (6th Cir. 2002), we reiterated, "the general rule in this circuit . . . that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Id.* at 380 (internal citation omitted); *see also Bray v. Palm Beach Co.,* 907 F.2d 150, 1990 WL 92672, at *2 (6th Cir. June 29, 1990) (finding "the facts alleged in the body of the EEOC charge, rather than merely the boxes that are marked on the charge, are the major determinants of the scope of the charge"). We explained in *Weigel* that, "[p]ursuant to this rule, we have recognized that 'where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'" 302 F.3d at 380 (quoting *Davis,* 157 F.3d at 463). This principle became known as the "expected scope of investigation test." *Weigel,* 302 F.3d at 380.

*Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). "The determinative inquiry in this case, therefore, is whether [Plaintiff] alleged sufficient facts in his EEOC Complaint to put the EEOC on notice" of the claims currently pending before this Court. *Id.* However, the September 8, 2022 Dismissal does not describe the five events in question. Nor do the parties describe the five events in question in their briefing. Nor do they attach as exhibits the First or Second EEO Complaint. The Court is therefore unable to determine what the five events in question are, much less whether Plaintiff has exhausted his administrative requirements with regard to those events or whether those events are encompassed by Plaintiff's Amended Complaint.

9

Defendant appears to view the EEO judge's commentary in the September 8, 2022 Dismissal as evidence that Plaintiff did not exhaust his administrative requirements with respect to the five events in 2020 referred to by the EEO judge. However, that argument is not supported by the text of the September 8, 2022 Dismissal. Indeed, the EEO judge's contention that those five events should be considered part of the existing federal litigation suggests the EEO judge concluded Plaintiff *had* sufficiently raised those events in the First EEO Complaint—which, notably, also appears to have been Defendant's position when it dismissed the Second EEO Complaint as duplicative of the First. Defendant also contends that Plaintiff "failed to abide by the EEO judge's order to amend his federal complaint." (Mot. 8, ECF No. 18.) But the EEO judge's September 8, 2022 Dismissal contains no such order; nor would the EEO judge have authority to issue such an order.

In sum, the Court is unable to conclude that Plaintiff failed to exhaust his administrative requirements, and therefore dismissal is not warranted on that basis.

**B.      Plaintiff has failed to state a claim for sex discrimination or sexual harassment.**

Defendant moves for dismissal of Plaintiff's Count I for sex discrimination and sexual harassment under Rule 12(b)(6). This claim requires Plaintiff to allege that Defendant discriminated against him or harassed him, at least in part, on the basis of his sex. *See* 42 U.S.C. § 2000e-16(a) ("All personnel actions" by the federal government "shall be made free from any discrimination based on race, color, religion, sex, or national origin"). Plaintiff can meet this burden "either through direct evidence of intentional discrimination or though circumstantial evidence." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2012).

Plaintiff's Amended Complaint does not contain facts sufficient to raise a reasonable inference that any of Defendant's employment actions were not made free from any discrimination based on sex. Plaintiff alleges only that he is male, that Defendant improperly

10

delayed approval for leave to care for his pregnant wife, that a supervisor stated that "Plaintiff should live with his life choices including his wife being pregnant and that Plaintiff [had] not been a good steward of Plaintiff's leave," that Plaintiff was inappropriately disciplined in relation to his leave requests, and that he was unnecessarily required to undergo additional training due to Plaintiff's being "out of the office for an exten[ded] period due to the birth of your child, and missed a lot of work before the birth." (Am. Compl. ¶¶ 36, 47–51, 59–67, 70–75.)

Even if these actions constitute adverse employment actions for Title VII purposes, they do not constitute direct or circumstantial evidence of discriminatory motive. Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004); *see also Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (defining direct evidence in discrimination cases as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions"). Plaintiff alleges in a conclusory fashion that Defendant's comments are "direct evidence that Plaintiff's supervisors were viewing him differently at work for him taking on a caregiver role as a male," that he was being "[p]enaliz[ed] . . . for failing to conform to masculine norms of focusing on work and leaving childcare 'to his wife,'" and that "Brewster's comments were based on sex stereotyping." (Am. Compl. ¶¶ 38–40, ECF No. 14.) But there is nothing in the content of these comments that relate to Plaintiff's sex, sex stereotypes, or masculine norms. These comments therefore do not require the conclusion that unlawful discrimination was at least a motivating factor in Defendant's actions.

Plaintiff's attempt to allege circumstantial evidence of discriminatory intent fares no better. Plaintiff alleges that, "[u]pon information and belief, [Defendant] grants LWOP request[s]

11

for females in similar circumstances," that "upon information an belief, [Brewster] would not have said the same thing [to] a pregnant female requesting leave in a similar circumstance—that the pregnant female should live with her life choices," that "[u]pon information and belief[,] because Plaintiff was male, [Defendant] treated him differently for the leave issues than they would have if [he] was female," and that "upon information and belief, the claim [that mothers were also required to schedule out intermittent use of FMLA] was false." (Am. Compl. ¶¶ 26, 38–40, 58, 88, ECF No. 14.) But allegations of discriminatory intent made "upon information and belief" are insufficient to survive a Rule 12(b)(6) motion. *See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). In *Southfield*, the plaintiffs alleged "upon information and belief" that the defendant treated customers of different national origins more favorably than the plaintiffs. The United States Court of Appeals for the Sixth Circuit characterized those allegations as "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency." *Id.* The Sixth Circuit further explained:

> No doubt disparate treatment of similarly situated people may support an inference of discrimination. *See, e.g., Keys v. Humana, Inc.,* 684 F.3d 605, 610 (6th Cir. 2012). But the plaintiffs have not identified any similarly situated individuals whom Flagstar treated better. They have merely alleged their "belief" that such people exist. These "naked assertions devoid of further factual enhancement" contribute nothing to the sufficiency of the complaint. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (internal quotation marks and alteration omitted).

*Id.*

Moreover, Plaintiff's allegations reflect a misunderstanding of the relevant comparison class by asserting that his supervisor "would not have said the same thing [to] a pregnant female requesting leave in a similar circumstance." A "pregnant female" would *not* be in "a similar circumstance" to Plaintiff, who was undisputedly not pregnant and was not seeking leave due to the attendant medical concerns of pregnancy. Rather, the appropriate comparators would be

female employees seeking approval for leave to care for a spouse, as Plaintiff was. Because Plaintiff does not allege that similarly-situated female employees seeking leave to care for a spouse were treated more favorably, and because the Amended Complaint is devoid of direct evidence that Defendant's actions were based on Plaintiff's sex, Plaintiff has failed to allege the discriminatory intent necessary to sustain his claims for sex discrimination and harassment. Plaintiff's Count I must therefore be dismissed.

**C.     Plaintiff's failure to disgorge his administrative award prior to filing suit does not require dismissal.**

Finally, Plaintiff moves to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) due to Plaintiff's failure to disgorge the $2,500 award that Defendant was ordered to pay in connection with Plaintiff's retaliation claim in the underlying EEO proceedings. Plaintiff admits that he has not disgorged the award, but states in his Amended Complaint that "Plaintiff seeks complete de novo review and is willing and will, if required, return the very minimal award from the EEO judge as to the per se retaliation claim, which Plaintiff brings in this case too." (Am. Compl. ¶ 7, ECF No. 14.)

The statute creating a federal employee's right to seek *de novo* review by the federal courts of an EEO decision does not contemplate disgorgement of any benefits ordered in the underlying EEO proceedings. *See* 42 U.S.C. § 2000e-16(c) (requiring only that an employee seeking review of an EEO decision file suit in federal court within 90 days of receipt of notice of a final decision by the EEOC). The only two Courts of Appeals to address the question have found the absence of a textual disgorgement requirement dispositive. *See Massingill v. Nicholson*, 496 F.3d 382, 386 (5th Cir. 2007) ("there is nothing in the statute creating the right of action, 42 U.S.C. § 2000e–16(c), which precludes suit if the award has been partially or even completely rendered"); *Farrar v. Nelson*, 2 F.4th 986, 988–89 (D.C. Cir. 2021) (§ 2000e-16(c)

13

"says nothing about requiring an employee to first disgorge, or offer to disgorge, an administrative remedy already received. Although Farrar *could* have returned, or offered to return, his award before filing suit, the statute doesn't require it").

On the other hand, district courts requiring disgorgement primarily rely on considerations of repose. *See, e.g.*, *St. John v. Potter*, 299 F. Supp. 2d 125, 129 (E.D.N.Y. 2004) (dismissing action because "the defendant has a right to expect that payment rendered in full satisfaction of a valid order of an administrative agency will not be ignored or undone"); *Pamplin v. Potter*, No. 05-73620, 2006 WL 1284915, at *3 (E.D. Mich. May 10, 2006) (same, quoting *St. John*); *Troupe v. Snow*, No. 1:03-CV-1351-RLV, 2005 WL 8154305, at *4 (N.D. Ga. July 20, 2005) (dismissing action because plaintiff's acceptance of the EEO monetary award due to "acceptance of the benefits" doctrine, which provides, that "a party 'who voluntarily and knowingly accepts the benefits of a judgment or decree cannot seek reversal of the judgment or decree'") (quoting *Wynfield Inns v. The Edward LeRoux Grp., Inc.*, 896 F.2d 483, 489 (11th Cir. 1990)); *Legard v. England*, 240 F. Supp. 2d 538, 542 (E.D. Va. 2002) (dismissing action where, although the plaintiff returned his monetary EEO award shortly after filing suit, the plaintiff failed to notify the defendant "that he intended, or even that he contemplated, filing an appeal or a civil action" prior to the defendant's satisfaction of the EEOC's award of injunctive relief). Other cases express concern for the complexity that would be involved in potentially unwinding a long-satisfied award involving, *e.g.,* backpay on which income taxes had already been paid or reinstatement. *See, e.g.*, *Kloock v. Potter*, No. 04-73610, 2005 WL 1593448, at *2 (E.D. Mich. July 6, 2005) (dismissing on statute of limitations grounds, but also noting that "[r]elitigating these claims ten years after they occurred and after damages and the injunctive relief of reinstatement have already been awarded would be an extremely complicated undertaking"); *see*

14

*also Vandesande v. Potter*, No. 08-60689-CIV, 2009 WL 10699891, at *7 (S.D. Fla. Feb. 19, 2009) (dismissing action both on statute of limitations grounds and due to unfairness in unwinding a settlement agreement entered into five years before the federal action was filed).

None of these cases refute the textual argument underlying the *Massingill* and *Farrar* decisions. Moreover, as pointed out by the *Massingill* court, a defendant's repose will be delayed by no more than the 90 days an EEO claimant has to file suit following a final administrative decision. *See* 496 F.3d at 386 ("it's not unreasonable to delay such repose for three months"). Indeed, as in *Massingill*, the present case "is not a situation involving the common-law defense of satisfaction of a debt, settlement, or judgment from some time ago, it is situation where the administrative scheme has played out, the plaintiff has ninety days to sue, and [he] does so within that time." *Id.* The Court therefore concludes that Plaintiff's failure to disgorge his administrative award is not a bar to commencing a federal action.

The Court is cognizant, however, of the possibility that the Court's *de novo* review may result in a non-liability finding for Defendant; that outcome would require Plaintiff to return his monetary award to Defendant. As such, "it might be difficult for the Defendant to actually and timely obtain the full amount of an award to be returned because [Plaintiff] may have already spent all or some of the award. Defendant would then be in the unenviable position of being a judgment creditor, trying to collect from a plaintiff who was permitted to keep an award while challenging another part of that award." *Jones v. Rogers*, No. 15-10222-CIV, 2017 WL 6397353, at *4 (S.D. Fla. June 29, 2017), *report and recommendation adopted*, No. 15-10222-CV, 2017 WL 6395664 (S.D. Fla. Aug. 14, 2017), *vacated on other grounds*, 730 F. App'x 885 (11th Cir. 2018). In light of this procedural difficulty, and in light of Plaintiff's willingness to return the

award, the Court will direct Plaintiff to place the amount of the award in escrow with the Court pending resolution of this action.

## IV. DISPOSITION

For the foregoing reasons, Defendant's Motion (ECF No. 18) is **GRANTED IN PART and DENIED IN PART**. Plaintiff's Count I claims for sex discrimination and sexual harassment are **DISMISSED**. Plaintiff's Count II claim for retaliation remains pending. Plaintiff is **ORDERED** to deposit $2,500.00 with the Court pending resolution of this action.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE