UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSHUA ZICKEFOOSE,

       **Plaintiff,**

    **v.**
                             **Civil Action 2:22-cv-1935**
                             **Magistrate Judge Chelsey M. Vascura**

LLOYD J. AUSTIN, III,
*Secretary, U.S. Department of Defense*,

       **Defendant.**


## OPINION AND ORDER

Plaintiff, Joshua Zickefoose, brings this action under Title VII of the Civil Rights Act of 1964 against Defendant, Lloyd J. Austin, III, Secretary, United States Department of Defense, asserting that Plaintiff received a poor performance evaluation while employed by the Department of Defense in retaliation for Plaintiff's prior complaints of sex discrimination. This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c), is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 30.) For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**.

### I.     BACKGROUND

The relevant facts are undisputed. At all relevant times, Plaintiff worked for the Defense Logistics Agency unit of the United States Department of Defense as a Quality Assurance Specialist. (Report of Investigation ("ROI") 87, ECF No. 32-1.) In July 2019, Plaintiff initiated an Equal Employment Opportunity ("EEO") complaint against his supervisor, Ronald Heinze,

and his second-level supervisor, Kathy Brewster, alleging that they discriminated against

Plaintiff on the basis of sex when they denied him leave to care for his pregnant wife and made

negative comments about Plaintiff's leave usage. (*Id.* at 88.) After Mr. Heinze and Ms. Brewster

retired, Charles ("Chuck") Fitzwater took over as Plaintiff's supervisor in November 2019. (*Id.*

at 88–89.)

On February 12, 2020, Mr. Fitzwater made a change to Plaintiff's timesheet to reflect that

leave taken by Plaintiff on January 30, 2020, was classified as Leave Without Pay, not Annual

Leave. (*Id.* at 97.) Plaintiff's coworker reported that on February 20, 2020, Plaintiff expressed

frustration with the change to his timesheet and stated that he "wanted to punch [Chuck] in the

face" or "inflict pain on Chuck." (*Id.* at 73.)

On March 2, 2020, several managers met with Plaintiff to provide him with a Memo for

Record regarding 24 hours' advanced notice that must be provided when requesting non-

emergency leave. (*Id.* at 367.) One of the managers present reported that

> [a]fter the management team had completed their presentation, [Plaintiff] said
> something like "thank you" and abruptly left the room and closed the door. After a
> very short time, he swung the door back open, and made a statement to the effect
> of, "I am taking these documents to the EEO office and then I'm leaving. I don't
> care if you mark it AWOL, I'm leaving." He then slammed the door as [another
> manager] stated that the leave was not approved.

(*Id.*) Several other employees in the area reported seeing or hearing Plaintiff shortly after this

meeting: "[Plaintiff] came back to his desk today upset yelling obscenities. He grabbed his coat

and said he was sick of this place. Then looked at me and said enjoy the rest of your day as he

stormed off" (*id.* at 363); "I heard someone pass by the tech quality cubicles behind me using

profane language the entire time he was in hearing distance. He was talking to himself about

someone and was extremely angry" (*id.* at 364); "I . . . heard and then witnessed [Plaintiff]

loudly yell the words 'fuck' multiple times, and 'assholes' at least once. I initially heard the

commotion, and stood up and turned around from my desk, witnessing him grab his stuff at his desk, and then storm out of the FMTE area" (*Id.* at 365); "I heard the angry rants as he left the room and continued as he made it to his desk and started slamming things around and then stormed off towards the 8-pod elevator area. Most of what he said was muffled except I could make out quite a few F-bombs along with something to the effect of him hating this place and hating someone. He told someone to 'enjoy the rest of their day' which was sarcastic in tone and very loud" (*Id.* at 366). It appears Plaintiff did proceed to the EEO office, as he amended his existing EEO complaint on March 2, 2020, to include allegations regarding Mr. Fitzwater changing Plaintiff's timesheet on February 12, 2020, and regarding the March 2, 2020 Memo for Record meeting. (*Id.* at 66–68.)

Importantly, Plaintiff does not dispute that he made a comment to his coworker on February 20, 2020, to the effect that Plaintiff wanted to punch Mr. Fitzwater in the face, or that he was loudly cursing on his way out of the office following the March 2, 2020 Memo for Record meeting. At most, Plaintiff argues that his behavior was not inappropriate "in context," and that "even if the jury finds Plaintiff's comments or actions otherwise inappropriate, a reasonably jury could find the Agency placed Plaintiff in a hostile work environment and a jury may find them liable for provoking Plaintiff's actions." (Pl.'s Mem. in Opp'n 6, 14, ECF No. 32.)

On March 17, 2020, Kimberly Morgan, another manager in Plaintiff's chain of supervision, issued Plaintiff a proposed 14-day suspension. (*Id.* at 370–76.) As grounds for the suspension, Ms. Morgan listed, among other things, Plaintiff's improper reporting of his January 30, 2020 leave; Plaintiff's refusal to correct that reporting as expressly requested by Mr. Fitzwater; Plaintiff's February 20, 2020 comments regarding wanting to punch Mr. Fitzwater or

inflict pain on him; Plaintiff's March 2, 2020 cursing after leaving the Memo for Record meeting; and Plaintiff's absent-without-leave status after the March 2, 2020 meeting. (*Id.* at 370–71.) Plaintiff again amended his existing EEO Complaint on March 17, 2020, to add allegations related to the notice of proposed suspension. (*Id.* at 76–78.) Plaintiff responded to the notice of proposed suspension through counsel on March 30, 2020. (*Id.* at 185–94.) It is not clear from the record that Plaintiff was actually suspended.

Finally, Mr. Fitzwater issued Plaintiff an "unacceptable" rating on Plaintiff's quarterly evaluation. (*Id.* at 386–87.) The evaluation is undated, but as the evaluation references Plaintiff's March 17, 2020 proposed suspension, and Plaintiff requested on April 28, 2020, to amend his existing EEO complaint to add allegations related to the evaluation, it must have been issued between these two dates. In pertinent part, Mr. Fitzwater's evaluation of Plaintiff's performance reads as follows:

- As appropriate, works independently at grade level commensurate to the current training phase of the program.

    o Needs Improvement: Due to a lot of missed time on the floor, I have had to make his trainer go in and complete or (re-)validate some of Joshua's work items. Joshua failed in 2 of the 4 Rating areas for the Floor.

- Demonstrates effective communication skills.

    o Unacceptable: Outburst when given direction that he doesn't like causes concern about his ability to talk to customers. Fine only when he is getting his way. Speech and Emails are abrupt.

- Interacts professionally with internal and external customers and maintains positive relationships.

    o Unacceptable: Outburst in the Office and Verbal threats against me as his Floor Supervisor. He has made it uncomfortable on the Floor, I have had to move other Technician's away from him.

- Demonstrates adaptability and flexibility.

4

- o Needs Improvement: Joshua has an EEO complaint with supervision that has since retired. He doesn't seem able to get around the issues that were caused about a year ago and move on.

        * * *

- Meets production goals/milestones established by the unit.
    - o Unacceptable: Missed one of his mandatory PACER Classes. Joshua failed in 2 of the 4 Rating areas for the floor. Combined with other aspects of this position he is not a good fit for FMTE.

        * * *

- Exhibits appropriate workplace behavior.

    - o Unacceptable: Verbal threats directed at a Supervisor and Disrespect to senior officials. Disobeying direct orders, several times. He has injected his opinion to others outside of FMTE trying to prove he is correct about his EEO case, causing the team to be uncomfortable when dealing with Joshua. He has called in or emailed at last min requesting time off, Leave without Pay, medical, or FMLA. Resulting in counseling on when to submit requests for time off.

(*Id.* at 386.) As mentioned above, Plaintiff also amended his existing EEO complaint on April

28, 2020, to add allegations related to this performance evaluation. (*See* EEO Decision 2, ECF

No. 18-1.) Mr. Fitzwater later amended the quarterly evaluation to remove any reference to

Plaintiff's EEO complaint and described the references to Plaintiff's EEO activity as

"inadvertent." (Fitzwater Decl., ROI at 669, ECF No. 32-2.)

     After discovery and briefing in the EEO proceedings, an EEO judge issued a decision on

November 30, 2021, granting summary judgment to Defendant as to Plaintiff's claims for

harassment, disparate treatment, and intentional retaliation. (EEO Decision 12–15, ECF No. 18-

1.) However, the EEO judge found Defendant liable for per se retaliation, owing to Mr.

Fitzwater's initial inclusion of references to Plaintiff's EEO complaint in the quarterly

evaluation. (*Id.* at 15–16.) The EEO judge found Defendant liable because the mention of EEO

activity was reasonably likely to deter Plaintiff or others from engaging in the EEO process, even

though Plaintiff had not established that the poor performance evaluation was unwarranted. (*Id.*

at 16.) As relief, the EEO judge ordered that Defendant provide three hours of EEO training to its supervisors at the Columbus, Ohio DLA location, and that Defendant "pay non-pecuniary compensatory damages to [Plaintiff] in the amount of $2,500." (*Id.* at 17.) Defendant subsequently submitted a March 11, 2022 declaration confirming that DLA had complied with the EEO judge's order. (ECF No. 18-2.)

Plaintiff commenced this action on April 11, 2022, seeking *de novo* review of his EEO complaint. (Compl., ECF No. 1.) Plaintiff's Amended Complaint asserts two counts under Title VII: Count I for discrimination and harassment on the basis of sex, and Count II for retaliation. (Am. Compl. ¶¶ 110–24, ECF No. 14.) Plaintiff seeks declaratory and injunctive relief as well as compensatory damages and attorney's fees and costs. (*Id.* at ¶ 126.) On January 11, 2023, the Court granted Defendant's Motion to Dismiss as to Plaintiff's discrimination and harassment claim, but declined to dismiss Plaintiff's retaliation claim. (ECF No. 24.) However, the Court ordered Plaintiff to place his $2,500 award of compensatory damages in escrow with the Court pending resolution of this action. (*Id.*)

Defendant filed the subject motion on August 23, 2023, moving for summary judgment on Plaintiff's remaining retaliation claim. (ECF No. 30.)

## II.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.*

Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

### III.    ANALYSIS

Because Plaintiff is an employee of a federal agency, his claim for retaliation is governed by 42 U.S.C. § 2000e-16, Title VII's prohibition on discrimination against federal employees on the basis of sex. This statute provides in pertinent part that "[a]ll personnel actions . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). This language is identical in relevant respects to the federal-sector Age Discrimination in Employment Act's ("ADEA") prohibition on discrimination on the basis of age: "All personnel actions . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633(a). Indeed, "[t]he ADEA federal-sector provision was patterned 'directly after'

Title VII's federal-sector discrimination ban." *Gomez-Perez v. Potter*, 553 U.S. 474, 487 (2008) (quoting *Lehman v. Nakshian,* 453 U.S. 156, 167, n. 15 (1981)). The United States Supreme Court has held that the ADEA's federal-sector antidiscrimination language (requiring that "[a]ll personnel actions . . . shall be made free from any discrimination based on age") also prohibits "retaliation on the basis of filing an age discrimination complaint." *Gomez-Perez*, 553 U.S. at 479, construing 29 U.S.C. § 633a(a). This is so even though, unlike the ADEA's private-sector provisions, the federal-sector provisions contain no separate, express prohibition on retaliation. *Id.*; *cf.* 29 U.S.C. § 623(d) ("It shall be unlawful for [a private or state or local government] employer to discriminate against any of his employees or applicants for employment . . . because such individual . . . has opposed any practice made unlawful by [the ADEA's private-sector prohibition on age discrimination], or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.").

Just like the ADEA, Title VII's federal-sector provisions contain no express prohibition on retaliation against employees making complaints of discrimination. However, as the language of the two federal-sector statutes is identical in relevant respects, it seems inescapable that the prohibition on retaliation that the Supreme Court located in the federal-sector ADEA's language in *Gomez-Perez* would apply equally to Title VII's federal-sector provisions. *Cf. Green v. Brennan*, 578 U.S. 547, 551 n.1 (2016) (citing *Gomez-Perez* and assuming without deciding that federal employees can bring retaliation claims under Title VII). The Court's analysis therefore assumes that § 2000e-16 permits a federal employee to bring a retaliation claim under Title VII.

Defendant's summary judgment arguments are limited to Plaintiff's inability to establish that his EEO activity was a but-for cause of any alleged retaliation. Here, too, the Supreme

Court's analysis of the federal-sector ADEA's language is instructive. In *Babb v. Wilkie*, the Supreme Court held that a federal-sector ADEA plaintiff must demonstrate that age was the but-for cause of the employment decision only when seeking "reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision." 140 S. Ct. 1168, 1177–78 (2020). If seeking "injunctive or other forward-looking relief," then the federal-sector ADEA plaintiff must demonstrate only that "the personnel action [was not] untainted by any consideration of age." *Id.* at 1171. *See also Bledsoe v. Tennessee Valley Auth. Bd. of Directors*, 42 F.4th 568, 578 (6th Cir. 2022) ("To establish that he is entitled to injunctive relief, [a federal-sector ADEA retaliation plaintiff] need only show that 'age discrimination play[ed] any part' in the decision to demote him.") (quoting *Babb*, 140 S. Ct. at 1174, 1178).

Again, because the statutory language of the federal-sector ADEA and Title VII provisions are identical, the Supreme Court's construction of the ADEA is the best guidance available for defining the causation standards under Title VII's federal-sector provisions. Both circuit courts considering the question post-*Babb* have concluded as much. *See*, *e.g.*, *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 833 (11th Cir. 2021) ("retaliation claims like Plaintiffs' that are brought under Title VII's federal-sector provision are not subject to the but-for causation standard that the District Court applied below) (citing *Babb*); *Huff v. Buttigieg*, 42 F.4th 638, 645 (7th Cir. 2022), *reh'g denied*, No. 21-1257, 2022 WL 16640618 (7th Cir. Nov. 2, 2022) ("The federal-sector provisions in the ADEA and Title VII are identical, so we have no trouble concluding, as did the Eleventh Circuit, that *Babb*'s causation standard applies equally to 42 U.S.C. § 2000e-16."). *See also Seifu v. Postmaster Gen., U.S. Postal Serv.*, No. 1:19-CV-572, 2021 WL 4745416, at *14 (S.D. Ohio Oct. 12, 2021), *aff'd*, No. 21-4068, 2022 WL 19835788 (6th Cir. Dec. 12, 2022) ("Recent case law suggests that federal employees may be able to

establish a causal connection [under Title VII] if they can prove that retaliation played 'any'

role.").

Defendant's argument that *Babb* should not control federal-sector Title VII retaliation

claims is unavailing. Although the Supreme Court in *Univ. of Texas Southwest Medical Center v.*

*Nassar*, 570 U.S. 338, 356 (2013), refused to import federal-sector ADEA standards into the

*private-sector* Title VII context due to differences in the statutes' structure, the federal-sector

ADEA and Title VII provisions in question are verbatim in the relevant respects.[1] The

undersigned will therefore apply the but-for causation standard to Plaintiff's claim for

compensatory damages, but will apply *Babb*'s "untainted by any consideration" standard to

Plaintiff's claims for declaratory and injunctive relief and attorney's fees and costs.

**A.       Declaratory and Injunctive Relief and Attorney's Fees and Costs**

We turn now to Plaintiff's evidence of causation. Plaintiff can establish causation with

either direct or circumstantial evidence. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th

Cir. 1997) "The direct evidence and circumstantial evidence paths are mutually exclusive; a

plaintiff need only prove one or the other, not both." *Id.* at 348–49. Direct evidence is "evidence

that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin*

*Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). In other words, "direct evidence is that

evidence which, if believed, requires the conclusion that unlawful [retaliation] was at least a

---

[1] Defendant's briefing, as well as several decisions of the United States Court of Appeals for the Sixth Circuit, unfortunately elide the distinction between the federal-sector and private-sector provisions of Title VII and the ADEA. The Sixth Circuit's citation in *Bledsoe* (a federal-sector ADEA and Rehabilitation Act Case) to *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (a private-sector ADEA case) for retaliation evidentiary standards, without recognition of the federal/private-sector distinction, is one such instance. The undersigned therefore is not bound by *Bledsoe*'s requirement of but-for causation via the *McDonnell Douglas* burden-shifting framework in a federal-sector ADEA retaliation case, as it is contrary to the Supreme Court's holding in *Babb*.

motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).

Because direct evidence of discriminatory intent is often difficult to acquire, the Supreme Court developed the circumstantial evidence framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). But if a plaintiff does acquire direct evidence of discriminatory motive, "[i]t is well settled that . . . she need not proceed under the *McDonnell Douglas* formula." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381–82 (6th Cir. 2002).

Plaintiff contends that Mr. Fitzwater's references to Plaintiff's EEO activity in the unacceptable performance evaluation (that Plaintiff "doesn't seem able . . . to move on" from his "EEO complaint" and that Plaintiff had been "trying to prove he is correct about his EEO case") are direct evidence that the unacceptable performance rating was motivated, at least in part, by Plaintiff's complaints of sex discrimination. The Court agrees because these references "require the conclusion" that Plaintiff's EEO activity at least partially formed the basis of Mr. Fitzwater's evaluation. As a result, no reasonable jury could conclude that the unacceptable performance evaluation was "untainted by any consideration" of Plaintiff's EEO activity and, thus, Plaintiff is entitled to declaratory and injunctive relief and attorney's fees and costs.

Plaintiff survives summary judgment on these types of relief even though he has not identified any comparator employees who were similarly situated to Plaintiff but treated more favorably. Although such comparators may be "especially relevant" to demonstrating that Defendant's proffered legitimate business reasons are merely pretext for retaliation under the *McDonnell Douglas* burden shifting framework, comparators are not *per se* required for plaintiffs to succeed on discrimination or retaliation claims. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016) (plaintiffs "can prove pretext in several ways"). Nor is it at all

clear that a showing of pretext is required to succeed under *Babb*'s "untainted" standard of

causation in the first place. Indeed, in private-sector Title VII "mixed motive" claims under

§ 2000e-2(m), in which plaintiffs need only establish that a protected characteristic was "a

motivating factor" rather than the but-for cause of discrimination, the Sixth Circuit has held that

"the *McDonnell Douglas/Burdine* burden-shifting framework does *not* apply" and that a plaintiff

"need only produce evidence sufficient to convince a jury that: (1) the defendant took an adverse

employment action against the plaintiff; and (2) race, color, religion, sex, or national origin was

*a* motivating factor for the defendant's adverse employment action. *White v. Baxter Healthcare

Corp.*, 533 F.3d 381, 400 (6th Cir. 2008) (cleaned up) (emphasis in original). The Court can

discern no practical difference between *Babb*'s guidance that § 2000e-16 is violated if retaliation

"plays any part in the way a decision is made" and § 2000e-2(m)'s prohibition on the use of

protected characteristics as "a motivating factor for any employment practice." *See Babb*, 140 S.

Ct. at 1174. The Court therefore concludes that no showing of pretext or comparator employees

are necessary to establish liability on a federal sector Title VII claim for retaliation under *Babb*'s

"untainted" causation standard. Accordingly, Defendant is not entitled to summary judgment on

Plaintiff's retaliation claim insofar as Plaintiff seeks declaratory and injunctive relief and

attorney's fees and costs.

**B.       Compensatory Damages**

Plaintiff has not, however, identified an issue of material fact as to whether Plaintiff's

EEO activity was the but-for cause of the "unacceptable" performance evaluation. In but-for

causation claims, a plaintiff "may prove unlawful retaliation by presenting direct evidence of

such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas* framework."

*Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (considering a private-sector Title VII but-

for causation retaliation claim). "In contrast to purely circumstantial cases of retaliation, an

employee who has presented direct evidence of improper motive does not bear the burden of disproving other possible nonretaliatory reasons for the adverse action. Rather, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Weigel*, 302 F.3d at 382 (considering a private-sector Title VII but-for causation retaliation claim) (citing *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999)). Here, Mr. Fitzwater's performance evaluation sets forth a number of legitimate, nonretaliatory reasons for the unacceptable rating, including Plaintiff's failure to properly complete work items, "outbursts" when given direction he does not like, "abrupt" communications, "verbal threats" against Mr. Fitzwater, missing mandatory classes, failing two of four rating areas, and disobeying direct orders. (ROI at 386.)

Plaintiff does not dispute that any of these incidents occurred. He disputes only that these incidents are sufficient to warrant an "unacceptable" rating. Plaintiff contends that his job performance had not changed between the April 2020 evaluation and his previous evaluations, in which he was uniformly given a "satisfactory" or "acceptable" rating. (Zickefoose Decl., ROI at 617; January 2019 Quarterly Progress Report, ROI at 127–30). Additionally, Plaintiff asserts that he received six performance-based awards during the period of 2015–2019, prior to Mr. Fitzwater becoming his supervisor. (Zickefoose Decl., ROI at 617.) In other words, Plaintiff contends that "[h]is performance had not changed, just the evaluation of it." (Pl.'s Mem. in Opp'n 3, ECF No. 32.) However, Plaintiff does not offer evidence reflecting that he engaged in outbursts or verbal threats of violence in previous evaluation periods, or that he failed to properly complete work items, attend required classes, or obey direct orders while still receiving "satisfactory" or "acceptable" ratings. *See, e.g., Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 450 (6th Cir. 2020) (plaintiff failed to establish that employer engaged in heightened scrutiny of her

13

work performance, as would support an inference of but-for causation in a private-sector Title VII retaliation claim, when failing to "offer evidence that her prior conduct was materially similar to the conduct" that led to the adverse employment action).

Nor is temporal proximity between Plaintiff's protected activity and the "unacceptable" performance rating of aid to Plaintiff in establishing causation. *Cf. Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283–84 (6th Cir. 2012) (collecting cases holding that a two- to three-month time lapse between a plaintiff's protected activity and occurrence of a materially adverse action is evidence of retaliatory motives). Plaintiff emphasizes that Mr. Fitzwater learned he was being added to Plaintiff's EEO complaint on February 18, 2020, and that Mr. Fitzwater issued the "unacceptable" performance rating in April 2020. (Pl.'s Mem. in Opp'n 14, ECF No. 32.) However, Plaintiff's comments about punching Mr. Fitzwater and his outburst following the Memo for Record meeting both occurred between February 18, 2020, and Mr. Fitzwater's issuance of the "unacceptable" performance rating. These intervening events are inconsistent with an inference of but-for causation based on temporal proximity. *See*, *e.g.*, *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 628 (6th Cir. 2013) ("an intervening legitimate reason to take an adverse employment action dispels an inference of retaliation based on temporal proximity") (cleaned up). Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim insofar as Plaintiff seeks compensatory damages.

## IV.    DISPOSITION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 30) is **GRANTED IN PART** insofar as Plaintiff seeks compensatory damages and is otherwise **DENIED**. The Clerk is **DIRECTED** to disburse the $2,500 that Plaintiff placed in escrow with the Court, along with any accrued interest, to Defendant.

14

The Court also hereby gives notice of its intention to enter summary judgment in Plaintiff's favor pursuant to Federal Rule of Civil Procedure 56(f)(1) as to his claims for declaratory and injunctive relief and attorney's fees and costs. For the reasons set forth above, the Court concludes that there are no genuine issues of material fact precluding entry of judgment in Plaintiff's favor as to non-compensatory relief arising out of Mr. Fitzwater's issuance of an "unacceptable" performance rating, which was motivated, in part, by Plaintiff's prior sex discrimination complaints in violation of the Title VII's federal sector provisions. The Court therefore intends to issue a declaration and enter a permanent injunction enjoining Defendant from retaliating against Plaintiff on the basis of Title VII-protected activity in the future. The parties are advised that violation of this injunction by Defendant would entitle Plaintiff to monetary relief in the form of sanctions for Defendant's violation of a Court order. The Court also intends to award Plaintiff his attorney's fees and court costs pursuant to 42 U.S.C. § 2000e-5(k), 28 U.S.C. § 2412, and Federal Rule of Civil Procedure 54(d).

Any objection to the Court's intended judgment entry must be filed no later than **DECEMBER 1, 2023**.

        **IT IS SO ORDERED.**

_/s/ Chelsey M. Vascura_
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE