UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOSHUA ZICKEFOOSE,**

    **Plaintiff,**

  v.                                    **Civil Action 2:22-cv-1935**
                                         **Magistrate Judge Chelsey M. Vascura**

**LLOYD J. AUSTIN, III,**
*Secretary, U.S. Department of Defense*,

    **Defendant.**

**OPINION AND ORDER**

    Plaintiff, Joshua Zickefoose, brings this action under Title VII of the Civil Rights Act of 1964 against Defendant, Lloyd J. Austin, III, Secretary, United States Department of Defense, asserting that Plaintiff received a poor performance evaluation while employed by the Department of Defense in retaliation for Plaintiff's prior complaints of sex discrimination. This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c), is before the Court on Defendant's Objection in Part, and Motion to Sustain in Part, the Court's Intended Judgment Entry Pursuant to Opinion & Order, ECF No. 36 (ECF No. 37), which the Court construes as a second motion for summary judgment (*see* Order, ECF No. 39). For the following reasons, Defendant's motion for summary judgment (ECF No. 37) is **GRANTED**.

                              **I.    BACKGROUND**

    Plaintiff's Amended Complaint asserts claims for sex discrimination, harassment, and retaliation under the federal-sector provisions of Title VII, 42 U.S.C. § 2000e-16, and seeks

compensatory damages, declaratory and injunctive relief, and attorney's fees and costs. (ECF No. 14.) On January 11, 2023, the Court granted Defendant's Motion to Dismiss as to Plaintiff's discrimination and harassment claim, but declined to dismiss Plaintiff's retaliation claim. (ECF No. 24.) However, the Court ordered Plaintiff to place his $2,500 award of compensatory damages awarded by the EEO judge in underlying administrative proceedings in escrow with the Court pending resolution of this action. (*Id.*)

Plaintiff's remaining retaliation claim pertains to an "unacceptable" rating issued by Plaintiff's supervisor, Charles ("Chuck") Fitzwater, on Plaintiff's April 2020 quarterly progress report. (Report of Investigation ("ROI") 386, ECF No. 32-1.) Plaintiff argued that Mr. Fitzwater's inclusion of comments that "Joshua has an EEO complaint with supervision that has since retired. He doesn't seem able to get around the issues that were caused about a year ago and move on" and "[h]e has injected his opinion to others outside of FMTE trying to prove he is correct about his EEO case, causing the team to be uncomfortable when dealing with Joshua" as support for the "unacceptable" rating constituted retaliation for Plaintiff's earlier complaints of sex discrimination. Defendant argued that the "unacceptable" rating was instead the result of a number of other legitimate, nonretaliatory reasons documented in the progress report, including Plaintiff's failure to properly complete work items, "outbursts" when given direction he does not like, "abrupt" communications, "verbal threats" against Mr. Fitzwater, missing mandatory classes, failing two of four rating areas, and disobeying direct orders. (ROI at 386.)

Defendant initially moved for summary judgment on the retaliation claim on August 23, 2023. (ECF No. 30.) On October 31, 2023, the Court granted Defendant's first motion for summary judgment in part. (ECF No. 36.) Specifically, the Court concluded that Plaintiff was not entitled to compensatory damages under *Babb v. Wilkie*, 589 U.S. 399, 412 (2020), because

2

Plaintiff could not establish that retaliation was the but-for cause of the "unacceptable" rating. However, the Court denied summary judgment for Defendant on Plaintiff's claims for injunctive and declaratory relief and attorney's fees, because *Babb* does not foreclose "injunctive or other forward-looking relief" when a federal sector Title VII plaintiff can demonstrate that "the personnel action [was not] untainted by any consideration of [discrimination complaints]." *Id.* at 402. The Court found that Mr. Fitzwater's comments relating to Plaintiff's EEO activity were "direct evidence that the unacceptable performance rating was motivated, at least in part, by Plaintiff's complaints of sex discrimination" and therefore the progress report was not untainted by consideration of Plaintiff's sex discrimination complaints. (Op. & Order 11, ECF No. 36.)

As a result, the Court granted summary judgment in Defendant's favor on Plaintiff's claims for compensatory damages and ordered the Clerk of Court to disburse to Defendant the $2,500.00 that Plaintiff had placed in escrow with the Court. (*Id.* at 14.) The Court further provided notice under Federal Rule of Civil Procedure 56(f)(1) of its intention to enter summary judgment in favor of Plaintiff as to his claims for declaratory and injunctive relief and attorney's fees and costs. (*Id.* at 15.)

Defendant timely objected to the Court's notice of intended judgment entry. (ECF No. 37.) Because the objection raised several arguments that were not included in Defendant's earlier motion for summary judgment, the Court construed Defendant's objection as a second motion for summary judgment and provided Plaintiff an opportunity to file an opposition (ECF No. 40) and Defendant to file a reply (ECF No. 41). The second motion for summary judgment is now fully briefed and ripe for decision.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

### III.     ANALYSIS

As an initial matter, Defendant appears to seek reconsideration of parts of the Court's October 31, 2023 Opinion and Order granting in part Defendant's first motion for summary judgment. (*See* 2d Mot. for Summ. J. 9, ECF No. 37.) Namely, Defendant "respectfully disagrees" that Mr. Fitzwater's EEO-related comments "constituted differential treatment that

4

would not have occurred but-for [Plaintiff's] prior protected activity." (*Id.*) Defendant has not identified any clear error of law, newly discovered evidence, or any other grounds for reconsidering that ruling. *See Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982) (district courts review motions to reconsider under the same standard as motions to alter or amend under Rule 59(e) of the Federal Rules of Civil Procedure); *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009) (to prevail under Rule 59(e), the movant must show: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice). Nor should a motion for reconsideration be used to re-litigate issues previously considered. *Am. Marietta Corp. v. Essroc Cement Corp.*, 59 F. App'x 668, 671 (6th Cir. 2003). Accordingly, the Court declines to reconsider its conclusion that Mr. Fitzwater's comments constitute differential treatment that would not have occurred but for Plaintiff's complaints of sex discrimination.

However, Defendant also raises several new arguments. The Court will consider each in turn.

**A.      Mr. Fitzwater's EEO-related comments were part of a "personnel action."**

Defendant argues that it cannot be liable under the federal sector provisions of Title VII because the progress report in which Mr. Fitzwater's offending comments appeared was not itself a "personnel action" as required by § 2000e-16. This statute provides in pertinent part that "[a]ll personnel actions . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). In *Babb*, the United States Supreme Court noted that the federal sector provisions of the Age Discrimination in Employment Act (29 U.S.C. § 633a, "ADEA"), which is identical in relevant respects to Title VII's federal-sector provisions, does not define the term "personnel action." 589 U.S. at 405. However, the Supreme Court assumed that the definition of "personnel action" in the Civil Service Reform Act of 1978,

5

5 U.S.C. § 2302(a)(2)(A) ("CSRA"), would apply to the ADEA. *Id.* Relevant to Plaintiff's claims, the CSRA defines "personnel action" to include, among other things, "a performance evaluation under chapter 43 of this title." 5 U.S.C. § 2302(a)(2)(A)(viii). Chapter 43 of the CSRA provides in turn that

> [e]ach agency shall develop one or more performance appraisal systems which—
>
> (1) provide for periodic appraisals of job performance of employees;
>
> (2) encourage employee participation in establishing performance standards; and
>
> (3) use the results of performance appraisals as a basis for training, rewarding, reassigning, promoting, reducing in grade, retaining, and removing employees.

5 U.S.C. § 4302(a). The Court has no trouble concluding that Plaintiff's April 2020 quarterly progress report was part of a "performance evaluation" for the purposes of the CSRA, and, by extension, a "personnel action" for the purposes of Title VII. The progress report was clearly a "periodic appraisal" of Plaintiff's job performance, and therefore the progress report was part of a "performance evaluation under chapter 43." *See* 5 U.S.C. §§ 2302(a)(2)(A)(viii), 4302(a)(1).

Defendant contends that the Department of Defense differentiates among different types of performance evaluations, and that some types constitute personnel actions while others do not, citing Department of Defense Instruction 1400.25, Volume 431. Although it is true that the Instruction differentiates between different types of performance evaluations, nowhere in the Instruction does it indicate that the Department of Defense considers any of these evaluations to either constitute or not constitute a personnel action. Nor, contrary to Defendant's contention, does Plaintiff's April 2020 quarterly progress report appear to fall within the Instruction's definition of "progress reviews," which are described as "formal performance discussions" for which "[e]mployees are not given a performance narrative or performance element ratings." (DoDI 1400.25- DoD Instruction 1400.25-V431, § 3.4(c).) Instead of a discussion, the April

6

2020 quarterly progress report is a written document that assigns Plaintiff a rating on eight different performance areas. It thus seems that the April 2020 quarterly progress report is more akin to a "performance appraisal," which the Instruction describes as including "a written rating of record" for various "performance elements," and which Defendant concedes is a "personnel action." (*Id.* at § 3.5; Def.'s 2d Mot. for Summ. J. 11 n.5, ECF No. 37.) The Court therefore finds that the April 2020 progress report was a "personnel action" for purposes of Title VII.

B.  **Plaintiff has not demonstrated that the April 2020 progress report would dissuade a reasonable worker from making complaints of discrimination.**

Defendant further argues that the only "personnel actions" that are relevant for purposes of § 2000e-16 are those that effect "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." (Def.'s 2d Mot. for Summ. J. 10, ECF No. 37) (quoting *Freeman v. Potter*, 200 F. App'x 439, 441–42 (6th Cir. 2006)). Here, the Court agrees that only personnel actions that are "materially adverse" are actionable. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (deciding a federal-sector Title VII retaliation claim). But the "adverse action" standard Defendant relies on applies in *discrimination* cases; Title VII's *retaliation* protections in both the private and federal sectors are not limited to changes in employment terms and instead extend to any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Taylor* 703 F.3d at 336. Defendant notes that the "might well have dissuaded" standard originated in private-sector Title VII jurisprudence, citing *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006), and argues that it would therefore be inappropriate to import this standard into the federal sector. (Def.'s 2d Mot. for Summ. J. 11 n.4, ECF No. 37.) But Defendant fails to explain what material difference between the two sectors' provisions would prevent cross-application of the "might well have

7

dissuaded" standard (as opposed to the two sectors' differing causation standards, which are required by the differing causation-related language of §§ 2000e-2(a) and 2000e-16(a), as explained by the Supreme Court in *Babb*). The Court therefore will therefore require Plaintiff to show only that Defendant took an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Taylor*, 703 F.3d at 336.

Even under this more expansive standard, however, Plaintiff's retaliation claim fails. Critically, after initially including EEO-related comments in Plaintiff's April 2020 quarterly progress report, Mr. Fitzwater retracted those comments. Plaintiff nevertheless received an "unacceptable" rating on the revised progress report due to other legitimate, non-retaliatory reasons, including Plaintiff's failure to properly complete work items, "outbursts" when given direction he does not like, "abrupt" communications, "verbal threats" against Mr. Fitzwater, missing mandatory classes, failing two of four rating areas, and disobeying direct orders. And, even more critically, Plaintiff has not identified *any* negative repercussion he suffered as a result of his "unacceptable" April 2020 progress report. Defendant's second motion for summary judgment expressly noted this failure, and Plaintiff's opposition did not respond to it, other than to insist that the performance evaluation process as a whole was "tainted" under *Babb* by Mr. Fitzwater's initial inclusion of the EEO-related comments. (Def.'s 2d Mot. for Summ. J. 11, ECF No. 37; Pl.'s Mem. in Opp'n 7–8, ECF No. 40.) But the facts before the Court are very similar to those of *Taylor*, in which the United States Court of Appeals for the Sixth Circuit held that, in the context of the defendant's initial refusal to provide the plaintiff with a letter of recommendation, followed by the defendant's retraction of that decision and issuance of a letter of recommendation, it was "unclear how Taylor was harmed by this letter and why it would have dissuaded her from filing discrimination complaints." 703 F.3d at 337.

Although *Babb* lessened the burden for federal-sector plaintiffs to demonstrate *causation*, there is no indication that the Supreme Court intended to concomitantly reduce a federal-sector plaintiff's burden to demonstrate that he or she was *harmed* by discrimination or retaliation. Thus, although Mr. Fitzwater's initial EEO-related comments are sufficient to show that the evaluation process was "tainted" by retaliation, that retaliation is nevertheless not actionable because Plaintiff has not identified *any* harm he suffered as a result.

Because the Court finds that Plaintiff cannot satisfy the elements of his retaliation claim, the Court need not consider the parties' arguments regarding Plaintiff's entitlement to injunctive and declaratory relief or attorney's fees.

## IV.   DISPOSITION

For the foregoing reasons, Defendant's second motion for summary judgment (ECF No. 37) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE